UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

STEFEN ESCAMILLA,

    Plaintiff,

v.    Case No. 21-CV-00510

UNITED STATES OF AMERICA,

    Defendant.

## DECLARATION OF BRIAN ALLEN BARKER

I, Brian Allen Barker, pursuant to the provisions of Title 28, U.S.C. §. 1746, do hereby declare under penalty of perjury that the following is true an correct to:

    1) I am a custodian of records for the Federal Bureau of Investigation (FBI), Criminal Justice Information Services Division's National Instant Criminal Background Check System (NICS) Section in Clarksburg, West Virginia. I have reviewed any and all information maintained by the NICS Section regarding an individual named Stefen Edward Escamilla.

    2) Under the Brady Handgun Violence Prevention Act of 1993 (Brady Act), Title 18, United States Code (U.S.C.), section 922(t), the U.S. Attorney General was charged with establishing a system, the NICS, which the federal firearms licensee (FFL) must contact for a background check (NICS check) prior to transferring a firearm to a non-licensee to determine if the transferee is prohibited under federal or state law from receiving or possessing a firearm. The Brady Act required the U.S. Attorney General to establish NICS on or before November 30, 1998. The authority and power vested in the U.S. Attorney General to perform this function has been delegated to the FBI pursuant to Title 28, Code of Federal Regulations (C.F.R.), sections 0.85 and 25.3. Guidelines pertaining to the establishment, maintenance, and use of the NICS are set forth in 28 C.F.R. §§ 25.1 through 25.11. The NICS became operational on November 30, 1998.

    3) Under 28 C.F.R. § 25.6(b) and (d), NICS checks may be conducted by either the NICS Section or a state or local law enforcement agency serving as an intermediary between an FFL and the FBI. These intermediaries are referred to as points of contact.

    4) Wisconsin FFLs are required to contact NICS by telephone or via the Internet to initiate a background check for the potential transfer of a long gun (shotgun or rifle). However, if the transaction pertains to the transfer of a handgun, the state point of contact conducts the background check. When NICS receives a request from an FFL for a NICS check, the FFL must

1

provide NICS his or her FFL license number (assigned by the ATF), his or her codeword, and personal identifying information regarding the prospective transferee, as reflected on the ATF Form 4473. This identifying information includes the transferee's name, date of birth, sex, race, state of purchase, state of residence, place of birth, and country of citizenship among other identifying information.

     5) When an FFL contacts NICS to initiate a NICS background check, the system uses the biographic identifiers to search three electronic databases containing records, which may reveal information demonstrating the existence federal and/or state records which prohibit the transfer of firearms to that person. These databases are the: (1) National Crime Information Center, which contains records of wanted persons, subjects of protection orders, and other persons who pose a threat to officer and public safety; (2) Interstate Identification Index, which provides access to criminal history records; and (3) NICS Indices, which contains biographic information on prohibited persons as defined in 18 U.S.C. § 922(g) or (n) or under a state's law. Records

contributed to these national databases are modified, cancelled, and/or added to daily by the contributing agencies.

     6) The FBI manages the NICS, but each agency is "responsible for ensuring the accuracy and validity of the data it provides" to the NICS databases. See 28 C.F.R. § 25.5; see also 28 C.F.R. § 25.34. The FBI, as the repository for records contributed by law enforcement agencies and other entities, cannot effect changes to the record information, but can only investigate to determine whether the information is accurate or would disqualify an individual under federal or state law from possessing a firearm.

     7) A NICS check will result in a response from the NICS to the FFL outlining three possible courses of action: (1) Proceed with the transfer of the firearm; (2) deny the transfer of the firearm; or (3) delay the transfer of the firearm.

     8) For U.S. Citizens, if the potential transferee's name does not match any record searched by the NICS, then the NICS generates an automatic electronic response of "proceed" and the NICS Contracted Call Center will provide the FFL with a unique transaction number, which is electronically generated by the NICS, and provide the response of "proceed." The NICS-generated response, indicating no records have been found, is also referred to as an "immediate" proceed.

     9) If the potential transferee's name is electronically matched with a record contained in the NICS Indices that meets a threshold score as being a valid match or a III record with an identification for firearm flag set to D, the NICS system generates an automatic response of deny. This is referred to as an "immediate" denial. For a hit occurring in III or NCIC and for those NICS Indices hits needing a manual review the transaction is referred to a NICS examiner for processing. Upon confirmation that a record demonstrates an individual is prohibited from receiving a firearm, the NICS Section will inform the FFL to deny the transfer of the firearm and record this answer on the ATF Form 4473. The FFLs that contact the NICS via the Internet do so through the NICS E-Check. The NICS E-Check allows authorized users to access the NICS through a secure Internet connection. Registered FFLs and their registered employees can initiate

a new NICS background check, check the status of a previously delayed transaction to determine if the transaction remains in a delay status or has been changed to a proceed or deny, and query the NICS transaction number (NTN) status information for previously initiated transactions (whether submitted through the NICS E-Check or the NICS Contracted Call Center)."

10) For those transactions in which the NICS Section cannot provide a definitive response of either proceed or deny, the transaction will be placed in a "delayed status" for further research. "Delayed" transactions are those non-canceled transactions which the FFL has not yet been notified of the final determination. The NICS Section conducts research on delayed transactions to determine whether the record(s) in question demonstrates that transfer of a firearm to the potential purchaser would violate 18 U.S.C. § 922(g) or (n) or state law. If the NICS Section cannot determine whether a delayed transaction should be denied within three business days of the initiation of the background check, the transaction will remain in an "open" status until a final determination can be made or it purges the transaction based on the current retention regulation. The NICS maintains records of "open" transactions until either (1) a final determination on the transaction is reached and has been communicated to the FFL resulting in the transaction status being changed to a "proceed" or a "denied" status, or (2) 90 days have elapsed from the date the background check was initiated, at which time all personal identifying information of the transferee and information identifying the specific FFL initiating the check is destroyed.

11) The Brady Act, specifically 18 U.S.C. § 922(t)(2)(C), requires all NTNs and their creation dates be retained indefinitely. In addition, the FBI, pursuant to 28 C.F.R. § 25.9, is required to maintain an automated NICS Audit Log of all incoming and outgoing transactions that pass through the system, including the type of transaction, the time and date of inquiry, identifying information about the prospective transferee, and the NTN. The NICS Audit Log is used to conduct audits of the use and performance of the NICS, notwithstanding the destruction requirement contained in 28 C.F.R. § 25.9(b)(1), regarding allowed transaction information. The NICS Audit Log is monitored and reviewed as part of that audit authority on a regular basis to detect any possible misuse of the NICS. Audits are also performed based upon specific misuse allegations from law enforcement authorities such as the ATF.

12) Pursuant to 28 C.F.R. § 25.9(b)(1), the NICS Section is required to destroy all NICS Audit Log records relating to allowed transactions (other than the NTN assigned to the NICS transaction and the date the NTN was assigned). The NICS Audit Log records relating to denied transactions are retained indefinitely. If the background check remains in delay status (i.e., is not approved or denied, thus allowing the FFL to proceed with the sale after three business days from the date of inquiry) or was previously proceeded, all information relating to the check except for the NTN and date, "will be destroyed after not more than 90 days from the date of inquiry." 28 C.F.R. § 25.9(b)(1)(iii).

13) A review of the NICS Audit Log reveals the NTN "1011V8DCC" was created on 07/11/2019 at 09:46 (09:46 a.m. Eastern Time) and the FFL was notified to "Deny" the transaction on 07/11/2019 at 09:47 (09:47 a.m. Eastern Time). The NICS Audit Log reveals the following:

3

a) On 07/11/2019, an FFL # 339015071G09783, named in NICS Section records as Tactical Defense, 2501 South Jason Drive, Appleton, Wisconsin, 54915 requested a background check, via the NICS E-check, on Stefen Edward Escamilla: Date of Birth ███ 1998; Gender Male; Race Hispanic/White; Social Security Number ███; Height 509; Weight 180; State of Residence Wisconsin; Place of Birth Wisconsin. A record of this transaction (subsequently denied) has been retained by the FBI.

b) On 07/11/2019, information matching Stefen Edward Escamilla (the individual attempting to purchase a firearm) was descriptively matched to a NICS Indices Record, NRI 1806885376. The entry was based on an individual who has been "adjudicated or committed mental defective," the transaction was placed into "Denied" status automatically by the NICS.

c) On 10/22/2020, the "Denied" status was retrieved by "john.hedden" at 09:47 (09:47 a.m. Eastern Time).

d) The NICS Indices Record, NRI 1806885376, was created on 04/10/2018 by the New York State Office of Mental Health Bureau of Forensic Services. Pursuant to 28 C.F.R. § 25.5(b), each data source is responsible for ensuring the accuracy and validity of the data it provides to the NICS Indices and will immediately correct any record determined to be invalid or incorrect. The NICS Section is not in possession of any of the supporting documentation utilized to create the NICS Indices entry. Under 45 C.F.R. § 164.512(k)(7), [a] "covered entity may use or disclose protected health information for purposes of reporting to the National Instant Criminal Background Check System the identity of an individual who is prohibited from possessing a firearm under 18 U.S.C. § 922(g)(4)...[.]"

14) In summary, the NICS Audit Log reveals that NTN "1011V8DCC," created on 07/11/2019 at 09:46 (09:46 a.m. Eastern Time) and was subsequently placed in a "Denied" status. The FFL received notification of the "Denied" status on 07/11/2019 at 09:47 (09:47 a.m. Eastern Time). The denial was based upon a NICS Indices record (NRI 1806885376) entered by a state agency for an individual who has been "adjudicated or committed mental defective."

Executed this 14th day of September 2021

*[signature]*

Brian Allen Barker
Legal Administrative Specialist
Clarksburg, West Virginia