UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEFEN ESCAMILLA,

    Plaintiff,

v.                                               Case No. 21-CV-00510

UNITED STATES OF AMERICA,

    Defendant.

## DEFENDANT'S TABLE OF UNPUBLISHED AUTHORITIES

    The United States of America, by its undersigned attorneys, pursuant to Civil L.R. 7(j)(2), hereby respectfully provides copies of the below-noted unreported decisions that are cited in its "Reply Brief in Support of Defendant's Motion for Summary Judgment."

- *Harp v. Glock*, No. 18-C-1039, 2019 WL 1859258 (E.D. Wis. Apr. 25, 2019)

- *Hart v. Dow Chem.*, No. 95 C 1811, 1998 WL 151815 (N.D. Ill. Mar. 27, 1998)

- *Long v. Alcoa Inc.*, No. 3:09-CV-547, 2010 WL 3338559 (E.D. Tenn. Aug. 24, 2010)

- *Thompson v. Fred's Stores of Tennessee, Inc.*, No. 3:15CV102TSL-RHW, 2015 WL 5655948 (S.D. Miss. Sept. 24, 2015)

    Dated at Milwaukee, Wisconsin this 13th day of April 2022.

                                                  RICHARD G. FROHLING
                                                  United States Attorney

                          By:    /s/ Brian E. Pawlak
                                  BRIAN E. PAWLAK
                                  Assistant United States Attorney
                                  Brian E. Pawlak Bar Number: 1009916
                                  Attorney for Defendant
                                  Office of the United States Attorney
                                  Eastern District of Wisconsin

517 East Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700
Fax: (414) 297-4394
E-Mail:   Brian.Pawlak@usdoj.gov

2019 WL 1859258
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

Rebecca I. HARP, Plaintiff,
v.
Allison GLOCK, Defendant.
Rebecca I. Harp, Plaintiff,
v.
NBCUniversal, Defendant.

Case No. 18-C-1039, Case No. 18-C-1159
|
Signed 04/25/2019

**Attorneys and Law Firms**

Rebecca I Harp, Milwaukee, WI, pro se.

Alonzo Wickers, Davis Wright Tremaine LLP, Los Angeles, CA, Brady C. Williamson, Eric J. Wilson, Godfrey & Kahn SC, Madison, WI, Zachary R. Willenbrink, Godfrey & Kahn SC, Milwaukee, WI, for Defendant

**DECISION AND ORDER**

LYNN ADELMAN, District Judge

*1 On September 1, 2016, the Investigation Discovery channel aired an episode of the true-crime series *Unraveled* entitled "Never Say Goodbye." The episode, which was produced by NBCUniversal Media, LLC, focuses on a thirteen-year relationship between two high-school and collegiate women's basketball players, Malika Willoughby and Rosalind "Roz" Ross. In 2011, Ms. Willoughby pleaded guilty to a homicide charge that arose out of her shooting Ms. Ross a year earlier. These events were the subject of an article authored by Allison Glock and published in *ESPN The Magazine* in 2012. Ms. Glock appears in the episode and offers commentary and opinions.

On July 9, 2018 and July 27, 2018, Rebecca Harp—Ms. Willoughby's mother—filed separate civil actions in this court against Ms. Glock and NBCUniversal. In each action, Ms. Harp, who is pro se, alleges that the episode contains defamatory statements and depictions about her relationship with her daughter and her daughter's childhood. These actions were consolidated. Before consolidation, each defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Later, Ms. Harp filed a motion to amend her complaint against NBCUniversal only. NBCUniversal does not oppose the motion to amend, but it states that if the court grants leave to amend it will file a motion to dismiss the amended complaint. Ms. Harp has also filed a motion for summary judgment against Ms. Glock.

As explained below, the episode itself, which is properly considered part of the plaintiff's complaint against each defendant, provides enough factual matter about Ms. Harp's claims to resolve each defendant's motion to dismiss. Moreover, Ms. Harp's proposed amended complaint, even if filed, would not change the result of the motions to dismiss or alter the course of future litigation. For these reasons, I will address each defendant's motion to dismiss in this order and deny Ms. Harp's motion for leave to file the amended complaint. I also deny the plaintiff's motion for summary judgment because it relies on defendant Allison Glock's failure to respond to requests for admissions that Ms. Harp served on her before the parties conferred under Federal Rule of Civil Procedure 26(f). Because the requests for admission were prematurely served, *see* Fed. R. Civ. P. 26(d)(1), Ms. Glock is not deemed to have admitted anything by failing to respond.

**I. The Episode Is Part of the Complaint**

When deciding a motion to dismiss under Rule 12(b)(6), a court usually cannot consider materials outside the plaintiff's complaint unless the court treats the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018); *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012). However, the court may, without treating the motion as one for summary judgment, consider materials outside the complaint when they are mentioned in the complaint, concededly authentic, and central to the plaintiff's claim. *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

*2 In the present case, the episode containing the allegedly defamatory statements meets these conditions. The plaintiff refers to it in her complaints, and because the episode contains the allegedly defamatory statements, it is central to her claims. Moreover, I do not understand the plaintiff to dispute the authenticity of the copy of the episode that NBCUniversal filed on DVD with its motion to dismiss. *See* Case No.

18-C-1159 ECF No. 17-2. Although the plaintiff previously stated that the DVD she received from NBC's counsel "has nothing on it," ECF No. 22 at 9, counsel later provided her with a second copy, ECF No. 23-1. Since receiving the second copy of the DVD, the plaintiff has not disputed its authenticity. Accordingly, in deciding the motions to dismiss, I will consider the episode as it appears on the DVD. Moreover, to the extent the complaint's allegations contradict or mischaracterize the contents of the episode, I will disregard them. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) (on a motion to dismiss, the court "is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document").

## II. The Allegedly Defamatory Content

**A. The Episode**

The episode is approximately 45 minutes long. After a brief introduction, the episode depicts, though dramatic reenactments and narration, the circumstances under which Roz and Malika met each other.[1] The skyline of downtown Milwaukee is shown, followed by a shot of a playground in what appears to be a residential neighborhood in the city. The camera moves to an indoor basketball court. While a reenactment is depicted, the narrator explains that Roz and Malika met at a local basketball summer league in the summer of 1997. At that time, Roz was seventeen years old and Malika was fourteen. The narrator explains that both girls were excellent basketball players and became friends after impressing each other on the basketball court.

The reenactment shows Roz and Malika spending time together, and the narrator explains that Malika began to hang out, regularly, at Roz's house. As the reenactment shows Malika having dinner with Roz's family, the narrator states, "Looking around the table, Malika sees a family dynamic very different from her own. She lives in a tough neighborhood a few miles from Roz with her mother, who works as a bus driver, and two younger sisters, one who has cerebral palsy." When the narrator says the words "tough neighborhood," images of what appears to be a residential neighborhood in the City of Milwaukee are shown.

At this point, Allison Glock is shown in a studio. She states, "Malika's home life was really challenging. She had a disabled sister whom she was, ah, largely responsible for, and she was under extreme stress and duress from a very early age." The episode returns to the reenactment, where actresses portray Malika and her mother.[2] The actress playing Malika's mother asks Malika to help with her sister. The actress playing Malika responds, "Okay Mom, I'll be right there." We then see Pamela Collins, Roz's mother, in the studio. She states, "I think Malika did have to grow up fast because she had to take care of her sisters." Roz's father, Willie Edward Collins, is also shown in the studio. He states, "One time Malika did mention something to me that she really didn't have a life for herself, you know, mother always had her watching other kids." Spencer Ross, Roz's brother, appears next. He states, "I know that Malika took on a lot of adult responsibilities as far as making sure her younger sister was okay and taking care of her, um, disabled sister. It was a lot on Malika's plate." While the Ross family speaks, the actress playing Malika is shown sitting in her home, looking lonely.

**\*3** The episode returns to the reenactment. It shows the actress portraying Harp coming home from work. As soon as she sits down, Malika excitedly runs to her. She says, "Hey Mom, I waited for you to get home so I could tell you about this awesome play I did." Before Malika finishes, her mother interrupts, "Not now, honey, I just got home, I'm tired, and I have to find your sister's medication." As her mother says these words, Malika's smile fades. She says "Okay. Maybe later." The actor portraying Ms. Harp wonders whether she left Malika's sister's medication in the kitchen. After she gets up to look, the camera lingers on Malika's face for several seconds to show her disappointment. After this scene, the reenactment shows Malika and Roz having fun together. The narrator states, "With Roz, Malika can forget her burdens, and she feels at home in a way she never has before."

In the scenes that follow, the reenactment shows Malika and Roz becoming closer. Spencer Ross states that it was almost like the two of them "shut everyone else out." The episode returns to Ms. Glock, who states "For Malika, Roz was a safe shore and I think the person who really loved her, or at least that she felt loved by." The reenactment shows the girls holding hands. The narrator states, "Then, one day in late summer, their relationship takes a tentative step in a more intimate direction." The reenactment shows Roz giving Malika a ring, and Malika kissing Roz. Then we see Glock in the studio, who says "I feel like it genuinely was, um, a love that sprung up organically from their relationship, and I, I wouldn't say one knew before another."

The episode depicts and explains how the girls' families disapproved of their romantic relationship. A psychotherapist

is shown in the studio; she explains some of the challenges that gay and lesbian teenagers face. The reenactment shows Roz's father learning that the girls were in love and ordering Roz to stop seeing Malika. The reenactment then turns to Malika and her mother in their home. Malika is shown on the couch when her mother asks what she's doing and sits down next to her. Malika tells her mother she's doing homework. Her mother says, "Let's see," and looks in one of Malika's notebooks. She discovers a Polaroid picture of Roz and Malika kissing. Malika's mother confronts Malika about the picture, and Malika describes it as "nothing," saying that the girls were just "kidding around." Malika's mother is upset, and Malika says it won't happen again. Malika's mother replies, "It better not." Malika says she's sorry, and her mother gets up from the couch in anger. We then see Patricia Collins in the studio, who states, " 'Cuz her mother didn't accept it. You know, she didn't accept her being gay. She didn't want her daughter—she didn't want a gay daughter." The episode continues to show Roz's conflict with her father and then explains that the adversity the girls faced caused their bond to strengthen.

Next, the episode shows Malika's love for Roz beginning to veer into unhealthy territory. Allison Glock states, "I think that initially, Malika felt like she'd, you know, won a lottery or something to be on the arm of Roz and to bask in the sort of attention that Roz would commonly get. But as their relationship progressed, it became a source of jealousy, um, and insecurity for Malika." The episode shows that, in the fall, Roz left Milwaukee to attend college in Oklahoma on a basketball scholarship while Malika finished high school. The narrator states, "It's the first time the girls have been separated, and Malika is miserable." The reenactment shows Malika sitting at home when her mother enters the room. Her mother states, "C'mon, you're moping around all the time now. It's because of that Roz girl, isn't it? I told you she wasn't good for you in the first place." After Malika replies, "Mom, she was fine," her mother tells her to come help with dinner, and Malika complies. We then hear Ms. Glock, "I think it was really challenging for Malika to be without Roz because Roz showed her affection and love and validated her—she felt fairly unmoored."

 **\*4** After this point, the episode does not depict or otherwise refer to Ms. Harp. It instead focuses on Malika's increasing jealousy and desire to have Roz to herself. It also shows Roz backing off from the relationship after becoming exasperated by Malika's jealousy and need for attention. Allison Glock states, "The sunlight of Roz went away; she felt left behind and I think, um, neglected." After a scene in which Roz tells Malika over the phone that it was time for a break in their relationship, Ms. Glock states, "I believe Malika probably was already prone to obsessiveness and jealousy, and when you marry that with love and then a partner who starts to pull away, it becomes a really combustible situation."

The episode explains that both girls went on to have successful college basketball careers. Roz was drafted by the WNBA, but an injury ended her career before she played a single pro game. Malika played college basketball at Kent State. After college, both women returned to Milwaukee and got a house together. Malika worked as a bank teller, while Roz coached basketball and worked as a security guard. Malika's obsessiveness, insecurity, and jealousy continued. The episode shows Malika beginning to drink alcohol, and Roz's family members, in the studio, explain that they were concerned about the amount she drank. Ms. Glock states that Malika grew increasingly possessive and erratic.

Eventually, Roz decides to leave Malika to take a job at her alma mater in Oklahoma. The episode explains that Roz is reluctant to tell Malika about her decision. However, one night, Roz and Malika drive to a fast-food restaurant for dinner. Before they leave, Malika takes a handgun that she and Roz had purchased for self-defense. The reenactment shows Malika and Roz arguing in their car after Roz receives a call and refuses to tell Malika who it is. During the argument, Malika accuses Roz of cheating on her, and Roz yells, "This is why I'm leaving you." Roz tells Malika that she's going to Oklahoma and not taking her with. At this point, the reenactment is interspersed with actual security footage from the drive-through lane. It shows the women arguing in the car and then Malika getting out of the passenger side, walking to the driver's side window, and shooting Roz. The footage from the drive-through lane and the reenactment show Malika cradling Roz's body on the pavement. The narrator explains that Roz was shot in the head and killed, and that, in August 2011, Malika pleaded guilty to first-degree reckless homicide and use of a deadly weapon. She received a 13-year sentence. After a few concluding remarks by Ms. Glock and Roz's family members, the episode ends.

### B. Plaintiff's Claims

 **\*5** The plaintiff alleges that the episode defames her by falsely depicting Malika's home life as a teenager in several ways. First, the plaintiff alleges that the episode falsely depicts that she and Malika lived in a "tough neighborhood." Second, she alleges that the episode falsely states that Malika

© 2022 Thomson Reuters. No claim to original U.S. Government Works.   3

was "largely responsible" for her disabled sister and that, because of this, her "home life was really challenging," resulting in "extreme stress and duress from a very early age." The plaintiff alleges that, in fact, Malika's sister was cared for by an in-home health aide five days a week until she entered foster care in 1998. Compls. ¶¶ 27–28. Third, the plaintiff alleges that the episode falsely implies that Malika was 14 years old and living at home with her mother at the time of the shooting. *See* Compls. ¶¶ 15, 22. Finally, the plaintiff alleges that the episode defames Malika by not providing enough information about the shooting, which the plaintiff believes was accidental. Compls. ¶¶ 36–42.

In addition to alleging claims for defamation, the plaintiff alleges claims for intentional infliction of emotional distress and fraudulent misrepresentation against NBCUniversal and Ms. Glock. She also alleges a claim for unjust enrichment against Ms. Glock. These claims are based on the same facts as the defamation claim.

### III. Discussion

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

### A. Defamation

The parties agree that Wisconsin substantive law applies to this case. Under that law, a defamation claim has three elements: (1) a false statement, (2) communicated by speech, conduct, or in writing to a person other than the one defamed, and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 534 (1997). Only the first and third elements are at issue in this case. Moreover, in their motions to dismiss, the defendants do not assert a privilege. Thus, the questions presented are (1) whether the plaintiff has adequately identified false statements, and, if so, (2) whether the allegedly false statements could reasonably be thought to either lower the plaintiff in the estimation of the community or to deter third persons from associating or dealing with her. The second question can be restated as asking whether the defendants' statements are "capable of defamatory meaning." Under Wisconsin law, this is a question of law that the court may resolve on a motion to dismiss, provided that the complaint sets forth the allegedly defamatory communication in its full context. *See Starobin v. Northridge Lakes Dev. Co.*, 94 Wis. 2d 1, 10 (1980); *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996). If the statement is capable of both a defamatory meaning and a non-defamatory meaning, then the jury must decide whether the statement is defamatory. *Starobin*, 94 Wis. 2d at 10.

The defendants initially contend that the complaints do not comply with Federal Rule of Civil Procedure 8(a) because they do not provide notice of the specific statements alleged to be false and defamatory. However, although the plaintiff's complaints are not perfectly drafted, they provide the defendants with reasonable notice of the statements at issue. I identified the allegedly defamatory statements in Part II of this opinion. Construing the complaints liberally, as I must when the pleader is pro se, *see, e.g., Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018), I find that the plaintiff's allegations provide adequate notice of her claims.

**\*6** Next, the defendants contend that the statements at issue are not capable of defamatory meaning or are not actionable for other reasons. As to some of the statements, I agree. First, the episode's describing Ms. Harp as living in a "tough neighborhood" is not capable of defamatory meaning. It is simply not the kind of statement that would cause a viewer to hold a person is less esteem.[3] Second, Ms. Harp cannot base a defamation claim on her belief that the episode implies that Malika was 14 years old and living at home with her mother at the time of her crime. The episode makes clear that the shooting did not occur until after Malika and Roz had graduated college and had been living together for some time. Thus, the episode does not contain this allegedly defamatory content. *See Forrest*, 507 F.3d at 542 ("A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document."). Finally, to the extent Ms. Harp alleges that the episode defamed Malika—such as by omitting details suggesting that the shooting was accidental—she does not state a claim, for a person may not base a defamation claim on statements that defame someone else. *See* 1 Rodney A.

Smolla, *Law of Defamation*. § 4:74 (2d ed. 2018 update) ("there can be no vicarious defamation, or defamation through guilt by association").

With respect to the remaining statements, I find that they are capable of defamatory meaning. The crux of Ms. Harp's claim is that the episode falsely asserts that she required Malika to provide most of the care for her disabled sister and thus deprived her of a normal childhood. This assertion begins with Ms. Glock's statement: "Malika's home life was really challenging. She had a disabled sister whom she was, ah, largely responsible for, and she was under extreme stress and duress from a very early age." Glock's statement is reinforced by statements from the Ross family, which appear in the episode immediately after Glock finishes her statement. Roz's mother states that she thinks that Malika had to "grow up fast because she had to take care of her sisters." Roz's father adds that Malika did not have a life of her own because her "mother always had her watching other kids." Finally, Roz's brother states that Malika "took on a lot of adult responsibilities as far as making sure her younger sister was okay and taking care of her, um, disabled sister."

The defendants contend that these statements are not capable of defamatory meaning because they simply attribute to Ms. Harp a parenting decision that others would consider reasonable in the context of a single-parent family with a disabled child. However, I understand Ms. Harp to be alleging that this was not a parenting decision she actually made. Instead, she worked hard to prevent Malika from having to bear the bulk of the responsibility for her disabled sister, including by arranging for an in-home health aide five days a week from 8:00 a.m. to 5:00 p.m. While either parenting decision might be respectable, it would not be unreasonable for a jury to conclude that portraying Malika as not having a real childhood because she was required to provide most of the care for her disabled sister harmed Ms. Harp's reputation. Instead of seeing Ms. Harp as a mom who went to great lengths to provide Malika with a normal childhood despite the challenges the family faced, the community sees Ms. Harp as a mom who allowed Malika's childhood to be consumed by care for her disabled sister. A jury could reasonably find that the defendant's portraying Ms. Harp as the latter when in fact she was the former tended to lower her esteem in the community.

The defendants point out that several of the allegedly defamatory statements about Malika's childhood are opinions. For example, Glock's statements that Malika's home life was "really challenging" and caused her "extreme stress and duress" are subjective evaluations of Malika's circumstances rather than purely factual propositions. However, under Wisconsin law, "communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs." *Converters Equip. Corp. v. Condes Corp.*, 80 Wis.2d 257, 263–64 (1977). Moreover, "[w]here the defamer departs from expressing 'pure opinion' and communicates what the courts have described as 'mixed opinion,' ... liability may result." *Bauer v. Murphy*, 191 Wis. 2d 517, 540 (Ct. App. 1995). "Mixed opinion" is a communication that blends an expression of opinion with a statement of fact. *Id*. "This type of communication is actionable if it implies the assertion of undisclosed defamatory facts as the basis of the opinion." *Id*.

**\*7** Here, the allegedly defamatory statements that could be viewed as opinions—when understood in the context of the entire episode—are based on the allegedly defamatory factual statement that Ms. Harp allowed Malika to provide most of the care for her disabled sister. The episode identifies no other potential source of Malika's "extreme stress and duress" and no other explanation for why Malika did not feel loved until she met Roz. Thus, the opinion-laden statements are also statements of fact that are capable of defamatory meaning to the extent they implicitly repeat the allegedly false representation that Malika was "largely responsible for" her disabled sister.

The defendants' remaining argument for dismissal of the defamation claim is that Ms. Harp has failed to plead special damages. This argument is based on the distinction between the two forms of defamation, libel and slander. Under Wisconsin law, a pleader of a claim for slander must allege special damages unless the alleged slander counts as slander per se. *See Martin v. Outboard Marine Corp.*, 15 Wis. 2d 452, 461 (1962). However, all libel is actionable without an allegation of special damages. *Id.* at 460–61. In the present case, the defendants assume that Ms. Harp's defamation claim is for slander, and they contend that therefore she must plead and prove special damages or show that this case involves slander per se.

Slander is often described as defamation by spoken words, while libel is described as defamation in writing. *See, e.g., Bauer*, 191 Wis. 2d at 524. However, this is an oversimplification. The Restatement (Second) of Torts § 568

(1977)—which Wisconsin courts follow, *see id.*—provides a fuller explanation of the distinction:

> (1) Libel consists of the publication of defamatory matter by written or printed words, by its embodiment in physical form or by any other form of communication that has the potentially harmful qualities characteristic of written or printed words.
>
> (2) Slander consists of the publication of defamatory matter by spoken words, transitory gestures or by any form of communication other than those stated in Subsection (1).
>
> (3) The area of dissemination, the deliberate and premeditated character of its publication and the persistence of the defamation are factors to be considered in determining whether a publication is a libel rather than a slander.

In the present case, although the allegedly defamatory statements were spoken, they are embodied in a non-transitory, physical form that anyone can view today. (Ms. Glock alleges that the episode is currently available for purchase on Amazon.com for $2.99. Compl. in 18-C-1039 ¶ 4.) Thus, the defamatory matter is embodied in a "form of communication that has the potentially harmful qualities characteristic of written or printed words." Restatement (Second) of Torts § 568. Ms. Harp's claim is therefore properly characterized as one for libel.

It is true that Ms. Harp labels her cause of action "slander." Compls. at p.15. However, under federal law, a plaintiff does not have to plead legal theories or label her cause of action, and "specifying an incorrect legal theory is not fatal." Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). Here, the facts alleged add up to a claim for libel rather than slander, and therefore I will apply the legal rules that govern claims for libel rather than slander. Because an allegation of special damages is not required in an action for libel, I may not dismiss the complaint based on Ms. Harp's supposed failure to plead them.

**B. Intentional Infliction of Emotional Distress**

Ms. Harp alleges that the defendants' defamatory statements give rise to a claim for intentional infliction of emotional distress. Under Wisconsin law, such a claim has four elements: (1) the defendant's conduct was intentioned to cause emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) the plaintiff suffered an extreme disabling emotional response to the defendant's conduct. Rabideau v. City of Racine, 243 Wis. 2d 486, 501 (2001). The defendants move to dismiss this claim on the ground that the complaint does not allege facts suggesting that their conduct in making the allegedly defamatory statements was extreme and outrageous.

**\*8** For conduct to be extreme and outrageous, "[t]he average member of the community must regard the defendant's conduct in relation to the plaintiff, as being a complete denial of the plaintiff's dignity as a person." Alsteen v. Gehl, 21 Wis.2d 349, 359–60 (1963). The Seventh Circuit has observed that "[t]his is a high standard, and Wisconsin courts have been reluctant to find conduct sufficiently extreme to meet this test." Kennedy v. Children's Serv. Soc'y of Wis., 17 F.3d 980, 986 (7th Cir. 1994).

In the present case, it is clear from viewing the episode that the defendants did not engage in extreme and outrageous conduct. Even if the episode contains defamatory statements, no reasonable member of the community would regard the defendants as having completely disregarded the plaintiff's dignity as a person. Indeed, although I have concluded that some of the defendants' statements are capable of defamatory meaning, this was not any easy conclusion to reach. Because it is not obvious that the statements would even lower the plaintiff's reputation in the community, making those statements certainly cannot constitute the kind of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Accordingly, this claim will be dismissed.

**C. Fraudulent Misrepresentation**

Ms. Harp alleges a claim labelled "Fraudulent Misrepresentation (Deceit)" against each defendant based on the allegedly defamatory statements. However, Ms. Harp misunderstands the nature of a claim for fraud or misrepresentation. A plaintiff may not bring such a claim whenever a person makes an allegedly false statement that harms the plaintiff. Instead, a claim for fraud or misrepresentation may be brought only when the plaintiff *believes* the misrepresentation. *See, e.g.,* Tietsworth v. Harley-Davidson, Inc., 270 Wis.2d 146, 157 (2004) ("All misrepresentation claims share the following required elements: 1) the defendant must have made a representation of fact to the plaintiff; 2) the representation of fact must be

Case 1:21-cv-00510-WCG   Filed 04/13/22   Page 8 of 20   Document 55

© 2022 Thomson Reuters. No claim to original U.S. Government Works. 6

false; and 3) the plaintiff must have believed and relied on the misrepresentation to his detriment or damage."). In the present case, the plaintiff does not allege that the episode contains false statements that she believed. Nor could she, as she obviously knows what happened in her own life. Accordingly, her claim for fraudulent misrepresentation will be dismissed.

**D. Unjust Enrichment**

Finally, Ms. Harp alleges a claim against Allison Glock for unjust enrichment, contending that Ms. Glock is unjustly profiting from the sale of the allegedly defamatory episode on Amazon.com. However, Ms. Harp misunderstands the nature of a claim for unjust enrichment. A defendant is not liable for unjust enrichment whenever he or she profits from something that harms the plaintiff. Instead, a claim for unjust enrichment may be brought only when the plaintiff confers a benefit on the defendant under circumstances making it inequitable for the defendant to retain the benefit without payment of its value. *See, e.g.,* *Sulzer v. Diedrich*, 258 Wis.2d 684, 692 (Ct. App. 2002). In the present case, Ms. Harp conferred no benefit on Ms. Glock, and therefore her claim for unjust enrichment will be dismissed.

### IV. Conclusion

For the reasons stated, **IT IS ORDERED** that the defendants' motions to dismiss (ECF No. 24 in Case No. 18-C-1039 and ECF No. 16 in Case No. 18-C-1159) are **GRANTED IN PART** and **DENIED IN PART**.

*9 **IT IS FURTHER ORDERED** that the plaintiff's motion to amend her complaint (ECF No. 38 in the lead case) is **DENIED**.

**FINALLY, IT IS ORDERED** that the plaintiff's motion for summary judgment (ECF No. 31 in Case No. 18-C-1039) is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1859258

---

### Footnotes

1   The episode refers to Ms. Ross and Ms. Willoughby by their first names. I will follow this practice when describing the contents of the episode.
2   Ms. Harp is never identified by name in the episode, and her actual likeness is never shown. However, the defendants do not dispute that viewers who know Ms. Harp would understand the portions of the episode depicting or referring to Malika's mother as referring to her.
3   I also note that the episode contradicts the plaintiff's claim that the episode "stated and showed that the family lived in the rough neighborhood of Harambee that is infested with dilapidated, boarded-up homes." Compls. ¶ 15. The episode never states that the family lived in Harambee, and the footage of the residential neighborhood does not show that it was "infested with dilapidated, boarded-up homes." The depicted neighborhood is not glamorous, to be sure, but it is not the kind of scene that normally comes to mind when one thinks of a "rough neighborhood."

---

**End of Document**    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by Flournoy v. Ghosh, N.D.Ill., November 28, 2011

1998 WL 151815
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.

Melissa and John Hart, Plaintiffs,
v.
Dow CHEMICAL, et al. Defendants.

No. 95 C 1811.
|
March 27, 1998.

MEMORANDUM AND ORDER

MANNING, District Court J.

**\*1** This matter comes before the court on objections by plaintiffs, Melissa and John Hart (Harts) to the report and recommendation issued by Magistrate Judge Keys on September 16, 1997(R & R). The court previously addressed the Harts' objections to Judge Keys' R & R in its September 30, 1997 Order. The court, however, reserved ruling on whether to adopt Judge Keys' R & R to deny plaintiffs' motions to vacate default admissions and strike defendant Terminix's motion for summary judgment, or instead to grant defendant Terminix's motion for summary judgment. The parties were granted leave to further brief the issue.

Upon further review of the parties' supplemental briefs and the record, the court finds that Magistrate Judge Keys erred in concluding that the requests for admissions were received on January 20, 1997. To the contrary, the record reveals that the defendants sought and received permission to begin discovery at a Rule 26(f) conference held before Magistrate Judge Gottshcall on September 23, 1996. The Dow defendants served the requests for admissions on October 23, 1996 and plaintiffs' counsel did not respond within thirty days as required by Rule 36(a). Moreover, based on the evidence presented by the defendants, the court is convinced that it is unlikely that the Harts or their counsel did not receive notice as to the existence of the Requests for Admissions. Due to their failure to respond, the Harts have admitted by default that they have no proof that their injuries were caused by exposure to the chemical "chlorpyrifos." The Harts' claims against Terminix are based, in part, on allegations of exposure to chlorpyrifos, which now, as a matter of law, cannot be proven. Accordingly, Terminix's motion for summary judgment is granted only with respect to exposure to chlorpyifos, not heptachlor or chlordane.

*Standard of Review of a R & R*

Under 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), a district court reviewing a R & R must make a de novo determination of those portions of the magistrate judge's R & R to which an objection is made. A district court may also review any issue de novo, even if no party objects. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986). When no timely objection is filed, however, the court in determining whether to accept the R & R is only required to satisfy that the R & R is not clearly erroneous to accept it. *See* Fed.R.Civ.P. 72 advisory committee's note to the 1983 amendment, *citing Campbell v. U.S. Dist. Court,* 501 F.2d 196, 206 (9th Cir.), *cert denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974); *see also Resolution Trust Corp. v. S & K Chevrolet,* 868 F.Supp. 1047, 1052 (C.D.Ill.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y.1988).

The court has the discretion to "accept, reject or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b); *Delgado v. Bowen,* 782 F.2d at 82. Judicial efficiency, however, requires parties to present their arguments to the magistrate judge in the first instance, as the review procedure is not an opportunity to present new arguments not considered by the magistrate judge. *Scholes v. Stine, McGuire & Benjamin,* 786 F.Supp. 1385, 1394 n. 8 (N.D.Ill.1992). It is with these principles in mind that the court reviews the R & R and the parties' objections to those portions.

DISCUSSION

**\*2** The Harts assert that the Dow defendants' request for admissions were improper and that the default admissions should be vacated by the court. The grounds for withdrawing the default admissions proposed by the Harts are: (1) the request for admissions were made without first convening a Rule 26(f) discovery conference; (2) the Harts did not receive copies of the requests for admissions until January 17,

1997 and that they timely responded by filing their motion to establish service date of the request, or in the alternative, motion to withdraw the admissions, and; (3) the Harts have repeatedly disclosed to the defendants and the court that they possess evidence contrary to the facts asserted in the admissions.

In response, defendant Terminix asserts that the request for admissions were proper because: (1) the parties convened a Rule 26(f) conference thus satisfying the requirements for the Rule 36 request for admissions; (2) on October 22, 1996, the requests for admissions were sent along with interrogatories to all of the parties, including the Harts, as acknowledged in sworn affidavits of the other defendants; (3) the Harts failed to timely respond to the requests for admissions despite constructive notice provided by reference to their existence contained in interrogatories which the Harts admit they received on October 22, 1997, and; (4) the Harts waived any objections to the propriety of the default admissions since they did not object to the interrogatories served upon them pursuant to Rule 33, which, if the Harts' assertion is correct, would have also been improper on the theory that no Rule 26(f) conference was convened.

### Compliance with 26(f)

"[R]equests for admission may not be served before the time specified in [a Rule 26(d) discovery conference] ... and [t]he matter is admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter ...." Fed.R.Civ.P. 36(a). "Except when authorized under these rules or by local rule, order, or agreement of the parties, a party may not seek discovery from any source before the parties have met and conferred as required by subdivision (f)." Fed.R.Civ.P. 26(d). The court finds that Judge Keys erred only in concluding that the Harts received the requests for admissions on January 20, 1997.

On October 12, 1995, the Harts moved to establish a discovery schedule pursuant to Rule 26(f). On October 18, 1995, (then) Magistrate Judge Gottschall held a status hearing at which she granted the Harts' motion and established a discovery schedule. Because the Harts' original complaint alleged class allegations, Judge Gottschall extended class discovery until December 31, 1995. Subsequently, the Harts announced their plan to amend their complaint to drop the class allegations. Regardless of who the Harts eventually intended to sue, causation would remain a critical issue in the litigation.

*3 Unsurprisingly, at a March 1, 1996 status hearing, Dean Barnhard, counsel for the Dow defendants, requested permission to begin written discovery on the medical causation issue. Barnhard wanted written discovery regarding causation to begin because there were genuine *Daubert* concerns as to the admissibility of the opinion of the Harts' expert Dr. Robert K. Simon, on the causation issue. Barnhard's request was clear and unambiguous—he wanted to conduct discovery on causation issue to "put the case to bed." (Tr. of Status Hr'g before Mag. J. Gottschall, 8). Judge Gottschall granted defendants leave to file "any written discovery." The only limitation imposed on the scope of discovery was that Judge Gottschall cautioned that the Harts should not be expected to answer contention interrogatories before the amended complaint was on file. The amended complaint was filed May 10, 1996 and was later followed by a second amended complaint on July 24, 1996. It is undisputed that the interrogatories were sent—nearly five months later—on October 22, 1996.

The plain meaning of the rules make it clear that requests for admissions cannot be made prior to the Rule 26(f) conference. The Harts assert that Rule 36(a) is "not a method of discovery" and that requests for admissions were premature because no Rule 26(f) conference was convened. Strictly speaking, requests for admissions pursuant to Fed.R.Civ.P. Rule 36(a) are not discovery tools because the requests are not used to ascertain whether information exists. To the contrary, requests for admissions eliminate issues from contention at trial and expedite the litigation process. *See* Misco, Inc. v. U.S. Steel Corp., 784 F.2d 198 (6th Cir.1986). The fact remains, however, that requests for admissions are governed by Rule 36(a). Once Judge Gottschall granted defendants' request to begin written discovery, the Harts were obligated to respond to the requests for admissions.

The requests for admission being sought were relevant to causation. All of the parties knew that the basis for the Harts' claim depended on causation. Indeed causation is the critical element. It made perfect sense to resolve preliminary causation concerns before beginning full-blown litigation. Otherwise, the court would have run the risk of compelling the defendants to litigate a case in which they might not be liable as a matter of law. If the Harts' needed more time to prepare for this issue, they could have sought additional time

or objected to the form or scope of the requests if they deemed them to be objectionable; no objections were made.

Of course, the Harts have a reasonable explanation; they did not respond to the requests for admissions because they were never received. The Harts' explanation while possible, is highly implausible, in light of the evidence presented by opposing counsel. The Harts admit that they received interrogatories and requests for production on October 22, 1993, but that it contained no requests for admissions. All of the defendants, however, executed sworn affidavits stating that they received copies of the discovery request [1] which was sent to the plaintiffs and that the requests for admissions were indeed included. Ironically, the Harts are the only persons on the entire service list who purportedly did not receive the requests for admissions. Even assuming that the requests were omitted, plaintiffs' counsel should have been aware that the requests for admissions existed due to the fact that the interrogatories and requests for production—which plaintiffs' counsel admits receiving—directly refer to the requests for admissions. Accordingly, the court concludes that the Harts were, in fact, served with Requests for Admissions which fully complied with Rules 36 and 26(f).

**\*4** The Harts, in their supplemental brief, contend that they complied with Rule 36(a) by responding to the requests for admissions on April 15, 1997. Their argument is premised on the false assumption that the requests were premature or alternatively never served. As addressed earlier, the court rejects both of these arguments. Accordingly the court finds that the Harts are in default and are deemed to have admitted that they are unable to show that their injuries were caused by chlorpyrifos.

*Withdrawal of Default Admissions*

The Harts now move to withdraw the default admissions pursuant to Rule 36(b). The court may allow the withdrawal and/or amendment of previous admissions if "the presentation of the merits will be subserved thereby and the party who obtains the admissions fails to satisfy the court that withdrawal or amendment will prejudice that party." *Bell & Howell Acceptance Corp. v. Sellers Sales & Serv., Inc.,* 1992 WL 18872, \*3–4 (N.D.Ill. Jan.28, 1992).

Permitting withdrawal in this action will not promote a full presentation of the merits of this case. The Harts purport to produce evidence showing that their injuries were in fact caused by Terminix's application of pesticides in their home. Yet, none of the reports submitted by plaintiffs' counsel state that any of the chemicals at issue in this action—dursban, chlordane, heptachlor, or chlorpyrifos—caused the Harts' injuries. To the contrary, the reports merely tell us, to no great surprise, that there were levels of insecticide in their home. Simply put, the Harts still do not know, nor have they been able to produce evidence showing, what caused their injuries; a particularly troubling prospect in light of the fact that they have had almost three years to establish a cause but yet appear to be no closer to finding it. The record reveals no facts which remotely suggest that accepting the default admission will subserve the merits of this case. Accordingly, the default admissions will stand.

*Summary Judgment*

The court finds no error with Judge Keys' conclusion that summary judgment is appropriate in light of the default admissions. Despite the harsh result of such an application, the Seventh Circuit has clearly stated that "[a]dmissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." *U.S. v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir.1987); *Skolnick v. Puritan Pride, Walgreen, Inc.,* 1995 WL 215178 at \*2 (N.D.Ill. April 10, 1995). Plaintiffs' counsel correctly asserts that plaintiffs' original complaint is controlling since the subsequent amended complaints have been stricken. The Dow defendants did not request admissions as to whether chlordane and heptachlor had caused their injuries. Terminix clearly acknowledges this fact by making its own request for admissions regarding chlordane and heptachlor to which plaintiffs' counsel responded on April 15, 1997. Accordingly, the court grants summary judgment in favor of Terminix on the issue of liability with respect to chlorpyrifos-containing products.

*Dismissal of Dow Defendants*

**\*5** Due to a discrete oversight, the September 30, 1997 Order indicated only that the Dow defendants were dismissed from this suit, when in fact, the dismissal was intended to be with prejudice. Accordingly, the court dismisses the Dow defendants with prejudice *nunc pro tunc.*

*Conclusion*

For the reasons stated above summary judgment is granted in favor of Terminix as it relates to whether chlorpyrifos caused the Harts' injuries.

**All Citations**

Not Reported in F.Supp., 1998 WL 151815

## Footnotes

1     The Discovery Request was comprised of:
(1) First Set of Requests to Admit to Plaintiff Melissa Hart; (2) Request for Production to Plaintiff Melissa Hart; (3) First Set of Interrogatories to Plaintiff Melissa Hart; (4) First Set of Requests to Admit to Plaintiff John Hart; (5) Request for Production to Plaintiff John Hart; (6) First Set of Interrogatories to Plaintiff John Hart.

---

**End of Document**      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3338559
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court, E.D. Tennessee.

Edsel L. LONG, Plaintiff,
v.
ALCOA INC., Defendant.

No. 3:09–CV–547.
|
Aug. 24, 2010.

**Attorneys and Law Firms**

Roy P. Neuenschwander, Law Office of Roy P. Neuenschwander, Knoxville, TN, for Plaintiff.

Betsy J. Beck, Robert L. Bowman, Kramer, Rayson LLP, Knoxville, TN, Kurt G. Larkin, Hunton & Williams, Richmond, VA, Scot A. Hinshaw, Hunton & Williams, LLP, Washington, DC, for Defendant.

*MEMORANDUM AND ORDER*

THOMAS W. PHILLIPS, District Judge.

*\*1 This matter is before the Court on the following motions:

# Defendant's Motion to Dismiss [Doc. 3];

# Plaintiff's Motion for Summary Judgment [Doc. 7];

# Plaintiff's Motion to Remand [Doc. 13];

# Joint Motion to Stay Discovery [Doc. 27].

For the following reasons, Defendant's Motion to Dismiss [Doc. 3] is **DENIED,** Plaintiff's Motion for Summary Judgment [Doc. 7] is **DENIED,** Plaintiff's Motion to Remand [Doc. 13] is **DENIED,** and the Joint Motion to Stay Discovery [Doc. 27] is **GRANTED.** The Court addresses each motion in turn.

**I. ANALYSIS**

**A. Defendant's Motion to Dismiss [Doc. 3]**

Defendant has moved to dismiss Plaintiff's complaint on two grounds [*See* Defendant's Memorandum of Law in Support of its Motion to Dismiss, Doc. 4]. First, Defendant argues that Plaintiff's state law claims are preempted by Section 301 of the Labor Management Relations Act. [*Id.*]. Second, Defendant argues that even if Plaintiff's state law claims are not preempted, those claims fail to state a cause of action under Tennessee law. [*Id.*]. Plaintiff has responded by arguing that his claims are not preempted by federal law [*See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Doc. 13].

Under Rule 12 of the Federal Rules of Civil Procedure, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DIRECTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir.2000)). To survive a motion to dismiss, the "[f]actual allegations contained in [the] complaint must 'raise a right to relief above the speculative level.' " *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). This "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly,* 127 S.Ct. at 1974).

Although denominated as a motion to dismiss, Defendant has really filed a motion for summary judgment. Both the Defendant and Plaintiff request that the Court consider matters not properly of record or before the Court, and Rule 12 of the Federal Rules of Civil Procedure was not intended as a substitute for summary judgment under Rule 56. Because Defendant's Motion to Dismiss [Doc. 3] is actually a motion for summary judgment, and because there is an insufficient record before the Court, this motion is **DENIED.**

**B. Plaintiff's Motion for Summary Judgment [Doc. 7]**
Plaintiff has moved for summary judgment based on the Defendant's failure to respond to Plaintiff's First Set of Requests for Admissions ("Request") that were filed in the prior state court proceeding [*See* Plaintiff's Motion for Summary Judgment, Doc. 7]. The Request was filed on

November 30, 2009. This case was removed to federal court on December 10, 2009.

**\*2** Defendant argues that because the parties had not conducted a Rule 26(f) discovery conference at the time the motion for summary judgment was filed, Defendant was not required to respond to the Request. [*See* Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment, Doc. 17]. On January 5, 2010, Plaintiff filed the Motion for Summary Judgment [Doc. 7]. On April 1, 2010, the parties held a Rule 26(f) conference. [*See* Report of Rule 26(f) Planning Meeting, Doc. 26]. During the Rule 26(f) conference, Defendant agreed to respond to the Request on or before April 19, 2010. [*Id*].

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zendith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, e.g. Bridgeport Music, Inc. v. WB Music Corp. .,* 508 F.3d 394, 397 (6th Cir.2007) ("The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party."). With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. The burden then shifts to the non-moving party to demonstrate the existence of genuine issues of material fact. *Id.* at 324. If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment.

Plaintiff argues that summary judgment is appropriate because Defendant failed to respond to the Request, and therefore admitted all statements contained in the Request. [*See* Plaintiff's Motion for Summary Judgment, Doc. 7]. This is not a proper basis for summary judgment. On January 7, 2010, United States Magistrate Judge C. Clifford Shirley filed a Memorandum and Order in which he stayed all discovery requests prior to the parties holding a Rule 26(f) conference. [Order Granting Defendant's Motion for Protective Order, Doc. 11]. In that Order, Judge Shirley made clear that "[n]either party shall seek discovery before the [Rule 26(f) ] conference, nor is either party obligated to respond to outstanding discovery prior to the conference." [*Id.* at 3]. In fact, Judge Shirley recognized that the Defendant was not required to comply with the Request until after the parties held a Rule 26(f) conference:

> **\*3** This matter having been removed the Court finds that the parties are prohibited from seeking discovery from one another until a Rule 26(f) conference has been conducted. *As to the outstanding discovery requests ... the Court finds that, because discovery in this matter is currently prohibited pending a Rule 26(f) conference,* the interests of judicial economy and consistency with the intent of the Federal Rules of Civil Procedure support staying further discovery in this matter until the parties have conferred pursuant to Rule 26(f).

[*Id.* at 2–3] [emphasis added]. This Order was based upon Rule 26(d)(1) of the Federal Rules of Civil Procedure, which provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed.R.Civ.P. 26(d)(1).

When Plaintiff filed the Motion for Summary Judgment [Doc. 7], the parties had not yet conducted a Rule 26(f) conference. Therefore, any requests for discovery—which includes requests for admissions under Rule 36 of the Federal Rules of Civil Procedure—were premature and cannot support a motion for summary judgment. *See DIRECTV, Inc. v. DeVries,* 302 F.Supp.2d 837, 839 n. 2 (W.D.Mich.2004) (recognizing that a "request for admission was premature and therefore not a valid basis for his summary judgment motion"). Because Defendant was not required to respond to the Request,

Plaintiff could not rely upon Defendant's failure to respond as a basis for summary judgment. Accordingly, Plaintiff's Motion for Summary Judgment [Doc. 7] is **DENIED.**

### C. Plaintiff's Motion to Remand [Doc. 13]

On January 19, 2010, Plaintiff filed a Response to Defendant's Motion to Dismiss, which also included a Motion to Remand [Doc. 13]. Plaintiff requests that the Court "remand this case back to State court which has appropriate jurisdiction." [*Id.* at 19]. Plaintiff does not explain why this case should be remanded pursuant to 28 U.S.C. § 1447(c).

In deciding remand motions based on lack of jurisdiction, the Court looks at whether it had jurisdiction at the time of removal. In this case, removal was based upon the Court's jurisdiction under 28 U.S.C. § 1332. That statute requires complete diversity between the parties and that "the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). In this case, Plaintiff is a resident of the State of Tennessee. [*See* Notice of Removal, Doc. 1 at 2]. Defendant is incorporated in the State of Pennsylvania and has its principal executive office in New York. [*Id*]. In addition to complete diversity, the amount in controversy exceeds $75,000.00 exclusive of interest and costs. [*See* Plaintiff's Second Amended Complaint as removed from state court, Doc. 1–1 at 49–50]. At the time this case was removed to federal court, the Court had jurisdiction under 28 U.S.C. § 1332. Accordingly, Plaintiff's Motion to Remand [Doc. 13] is **DENIED.**

### D. Joint Motion to Stay Discovery [Doc. 27]

**\*4** On August 5, 2010, the parties jointly moved to stay all discovery pending disposition of Defendant's Motion to Dismiss [Doc. 3] and Plaintiff's Motion for Summary Judgment [Doc. 13]. The parties also request that the Court stay all discovery to allow the parties to complete formal mediation. [*Id.*].

The Court finds the request well-taken. In particular, staying this proceeding will preserve judicial resources in the event that this case is resolved through mediation. Accordingly, all proceedings in this case are **STAYED UNTIL DECEMBER 31, 2010,** or until the Court is notified of mediation results (whatever is earlier). The parties shall notify the Court within **sixty (60)** days from entry of this Order the identity of the mediator who will conduct the mediation and of the date, time and place for the mediation. It is **FURTHER ORDERED** that the parties, their representatives and/or actual decisionmakers for the parties, including persons with actual settlement authority on behalf of all the parties to this litigation, shall be present for the mediation, which should be scheduled to occur prior to **NOVEMBER 29, 2010.** The parties shall promptly notify the Court of the results of the mediation. If the case is not resolved through mediation, the Stay shall be lifted.

## II. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. 3] is **DENIED,** Plaintiff's Motion for Summary Judgment [Doc. 7] is **DENIED,** Plaintiff's Motion to Remand [Doc. 13] is **DENIED,** and the Joint Motion to Stay Discovery [Doc. 27] is **GRANTED.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3338559

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 5655948
Only the Westlaw citation is currently available.
United States District Court, S.D.
Mississippi, Northern Division.

Angela THOMPSON, Plaintiff
v.
FRED'S STORES OF TENNESSEE, INC. d/b/a Fred's # 1090; Stirling Properties, LLC; et al., Defendants.

Civil Action No. 3:15CV102TSL–RHW.
|
Signed Sept. 24, 2015.

**Attorneys and Law Firms**

Warren L. Martin, Jr., Warren L. Martin, Jr., PA, Jackson, MS, for Plaintiff.

Amanda Green Alexander, Brittany D. Smith, Alexander Law, PA, Jackson, MS, for Defendant.

*MEMORANDUM OPINION AND ORDER*

TOM S. LEE, District Judge.

**\*1** On July 24, 2015, plaintiff Angela Thompson moved pursuant to Federal Rules of Civil Procedure 56, 12(c) and 26 for summary judgment or, in the alternative, for judgment on the pleadings as to defendant Fred's Stores of Tennessee, Inc. (Fred's) based on Fred's alleged failure to timely respond to plaintiff's requests for admissions, which were served on Fred's on June 3, 2015 and covered all the substantive allegations in plaintiff's complaint. She contemporaneously filed a "Notice of Deemed Admitted Requests for Admissions to Defendant, Fred's Stores of Tennessee, Inc." (Notice of Deemed Admissions) pursuant to Rule 36(a).[1] In her submissions, plaintiff asserted that based on the matters deemed admitted, there is no genuine issue of material fact and plaintiff is entitled to summary judgment or judgment on the pleadings.[2]

On July 27, 2015, Fred's filed a response in opposition to plaintiff's Notice of Deemed Admissions and a separate motion to stay discovery. In both submissions, Fred's took the position that under Rule 26(d)(1) and (f), plaintiff's requests for admission were premature because at the time she served her requests for admission, the parties had not conferred and

agreed on a discovery plan as required by Rule 26(f).[3] Fred's further argued that assuming for the sake of argument that it did miss the deadline to respond to plaintiff's requests for admission, then pursuant to Rule 36(b),[4] it should be allowed to withdraw or amend the deemed admissions since plaintiff had suffered no prejudice.[5] Thereafter, on July 31, 2015, Fred's filed a notice of service of responses to plaintiff's requests for admission.

In response to the motion to stay, and in her rebuttal in support of her Notice of Deemed Admissions, plaintiff contended that service of her requests for admission was not premature under Rule 26(f) as the parties, within the time prescribed by that rule, had communicated via email and telephone and clearly stipulated to proceeding with discovery.[6] Plaintiff responded in opposition to the motion to stay, contending no stay was needed as the parties had agreed to proceed with discovery. She further moved for an award of attorney's fees and costs as sanctions under Rule 11 relative to responding to Fred's motion to stay and Fred's alleged untimely response to plaintiff's requests for admission; she contended that an award of attorney's fees and costs was warranted, particularly in view of Fred's false assertion that the parties had not conferred or agreed to a discovery plan.

On August 17, 2015, Fred's filed a motion to withdraw, or in the alternative, amend deemed admitted requests for admission pursuant to Rule 36(b), taking the position that she would not be prejudiced by the withdrawal. Fred's contemporaneously filed a response to plaintiff's summary judgment/judgment on the pleadings motion, asserting that since the motion is based solely on the deemed admissions, then a ruling on plaintiff's motion for summary judgment/ judgment on the pleadings is premature until the court has ruled on Fred's outstanding motion to withdraw or amend the deemed admitted requests for admission.

**\*2** Based on its consideration of the parties' various motions and related submissions described herein, the court is of the opinion that at the time plaintiff served her requests for admission, the parties had not conferred and developed a discovery plan within the contemplation of Rule 26(d). The court so finds, irrespective of Fred's counsel's statement in her June 3 email to plaintiff's counsel that it was her "understanding that the scheduling of the case management conference will not impact the submission of discovery responses." Her understanding was incorrect, as Rule 26 plainly states: "A party *may not seek discovery from any*

*source* before the parties have conferred as required by Rule 26(f)," unless the proceeding is one exempt from initial disclosure under Rule 26(a)(1)(B)—which is not the case here—"or when authorized by these rules, by stipulation, or by court order." At the time the requests for admission were served, there was no court order authorizing discovery. The rules did not authorize discovery. And nothing has been submitted to show that the parties had conferred and developed a discovery plan or had stipulated to proceeding with discovery notwithstanding that they had not done so. Fred's demand in that email that plaintiff respond to its outstanding discovery requests does not qualify as "conferring" or as a "discovery plan" or as a "stipulation." Thus, despite what Fred's counsel stated in the email, plaintiff was not required to respond to Fred's then-outstanding discovery requests as they had been filed in violation of Rule 26(f)(1). [7] Likewise, Fred's was not required to respond to plaintiff's requests for admission, as the requests for admission were also filed in violation of Rule 26(f)(1). Of course, given that Fred's did timely respond to the interrogatories and request for production of documents that plaintiff filed at the same time as the requests for admission, it is apparent that Fred's did not fail to respond to the requests for admission because it believed the requests for admission were premature. Nevertheless, as plaintiff propounded the requests for admission before the parties conducted their mandatory Rule 26(f) conference or had stipulated that discovery could proceed, the court concludes that the requests for admission were premature and consequently, no response to the requests for admission was due from Fred's. It follows that the requests for admission are not deemed admitted under Rule 36(a); and it further follows that plaintiff's motion for summary judgment or judgment on the pleadings is not well taken and should be denied.

Even if the requests for admission were timely and proper under Rule 26(f), the court would find that Fred's should be allowed to withdraw its deemed admissions and that summary judgment or judgment on the pleadings was not appropriate. The court may permit the withdrawal of an admission if the withdrawal would "promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed.R.Civ.P. 36(b). Clearly, allowing withdrawal of the admissions would promote presentation of the case on the merits, and plaintiff cannot credibly claim that she will suffer cognizable prejudice if the admissions are withdrawn. In this vein, the Fifth Circuit has explained that under Rule 36(a),

*3 [I]t is proper to consider whether denying withdrawal would have the practical effect of eliminating any presentation of the merits of the case in determining whether Rule 36(b)'s first requirement is met, *see, e.g.,* Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir.1995), this and other courts have not relied solely on this factor in determining whether to permit withdrawal. Even where the presentation of the merits of a case would be eliminated, other factors considered are whether the [party seeking withdrawal] has demonstrated that the merits would be served by advancing evidence showing "the admission is contrary to the record of the case," or that the admission "is no longer true because of changed circumstances or [that] through an honest error a party has made an improvident admission." ... This circuit has also determined that a court acts within its discretion in considering the fault of the party seeking withdrawal, Pickens v. Equitable Life Assurance Soc., 413 F.2d 1390, 1394 (5th Cir.1969), or its diligence in seeking withdrawal, Covarrubias v. Five Unknown INS/Border Patrol Agents, 192 F. App'x 247, 248 (5th Cir.2006) (per curiam) (unpublished).

Le v. Cheesecake Factory Restaurants Inc., No. No. 06–20006, 2007 WL 715260, at *2 (5th Cir. Mar. 6, 2007). Unquestionably, refusing to allow Fred's to withdraw the admissions would eliminate any presentation on the merits. Further, it is apparent that the admissions were the result of mere oversight on the part of Fred's counsel. And, Fred's was diligent in seeking withdrawal.

Regarding prejudice, the Fifth Circuit has held:

> Prejudice may occur where a party faces "special difficulties ... caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." Am. Auto. Ass'n., Inc., v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1120 (5th Cir.1991). However, "[t]he necessity of having to convince a trier of fact of the truth of a matter erroneously admitted is not sufficient." N. La. Rehab. Center, Inc. v. United States, 179 F.Supp.2d 658, 663 (W.D.La.2001) (quoting F.D.I.C. v. Prusia, 18 F.3d 637, 640 (8th Cir.1994)).

Thanedar v. Time Warner, Inc., 352 Fed. App'x 891, 896 (5th Cir.2009). The court in *Thanedar* concluded that the plaintiff there did not suffer prejudice due to the district court's

decision to allow withdrawal of admissions where the plaintiff was on notice based on other discovery that the defendants were taking a position in the litigation that was contrary to the deemed admissions. *Id.* at 896–97. The court concluded that "[a]ny prejudice from the withdrawal of the admissions resulted 'from the inaccuracy of the admissions rather than the stage of the proceedings at which the [appellees] sought to amend [their] admissions.' " *Id.* at 897 (quoting *Prusia,* 18 F.3d at 640). Likewise, here, plaintiff was undeniably aware from Fred's answer and from its responses to her interrogatory responses that Fred's denied plaintiff's claim both as to liability and her claimed damages. Furthermore, the case is in its earliest stages. Although there has been some limited discovery, the case management conference has not yet been held and plaintiff will have ample opportunity to obtain evidence supportive of her claim. In short, therefore, it is clear plaintiff will suffer no prejudice from the granting of Fred's motion to withdraw.

**\*4** The court does still have discretion to deny a request to withdraw or amend an admission even when Rule 36(b)'s two-factor test has been satisfied. *In re Carney,* 258 F.3d 415, 419 (5th Cir.2001). However, the court perceives no valid basis for rejecting Fred's request to withdraw admissions in this case.

Therefore, based on all of the foregoing, it is ordered as follows:

Fred's motion to withdraw deemed admissions is granted; Plaintiff's motion for summary judgment, or in the alternative judgment on the pleadings, is denied;

To avoid future uncertainty, Fred's motion to stay discovery until the case management conference is granted; and lastly, in the court's discretion, plaintiff's motion for attorney's fees and costs is denied.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5655948

## Footnotes

1 Under Rule 36(a), a matter in a requests for admission is deemed admitted unless the party to whom the request is directed answers or objects to the matter within thirty days. *Williams v. Wells Fargo Bank, N.A.,* 560 Fed. App'x 233, 243–44 (5th Cir.2014).

2 The Fifth Circuit has held as follows:
> Rule 36 admissions are conclusive as to the matters admitted and cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the record. We have stressed that a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b). To withdraw an admission, Rule 36(b) requires that the court find that withdrawal 1) would serve the presentation of the case on its merits, but 2) would not prejudice the party that obtained the admissions in its presentation of the case. Even if a party establishes these two factors, the district court retains discretion to deny a request to withdraw an admission, and admissions on file may be an appropriate basis for granting summary judgment.

*Williams v. Wells Fargo Bank, N.A.,* 560 Fed. App'x 233, 244 (5th Cir.2014) (internal quotation marks and citations omitted).

3 Rule 26(f) provides that at least 21 days before the Rule 16(b) scheduling conference, the parties confer regarding a proposed discovery plan and then submit a written report outlining that plan for the court. Rule 26(d)(1) states:
> A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

|   |   |
|---|---|
|   | Uniform Local Rule 26(a)(4) recites that "[d]iscovery before the case management conference is governed by FED.R.CIV.P. 26(d)(1)." Fred's claims that "[t]he parties have not conferred and have not created or agreed to a discovery plan prior to the Case Management Conference," and thus contends that any discovery requests made prior to submission of the written report should be treated as null, so that there was no duty to respond as required by Rule 36. It makes this argument notwithstanding that on April 10, 2015, at a time when the parties clearly had not conferred concerning a discovery plan, Fred's propounded its own set of interrogatories, requests for production and requests for admission. |
| 4 | *See* Fed.R.Civ.P. 36(b)("Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."). |
| 5 | Fred's also objected in its response that plaintiff's Notice of Deemed Admissions was unaccompanied by the good faith certificate required by Federal Rule of Civil Procedure 37(a). Clearly, this objection is not well taken as plaintiff's Notice of Deemed Admissions was not a motion for an order compelling disclosure of discovery, to which Rule 37(a) applies, but was instead presented merely as plaintiff's notice to the court and to Fred's that she considers that in accordance with Rule 36(b), her requests for admission are deemed admitted as a result of Fred's alleged failure to timely respond. |
| 6 | Counsel for plaintiff states that at the time he served the requests for admission, he had already received discovery requests from Fred's, in response to which he had expressed his concern with proceeding with discovery when no case management order had been entered. In an email, he wrote:<br>　　I am aware that no formal stay was ever entered, but upon review of FRCP 26(f)(3), a discovery plan is required if discovery is to commence before the CMC. I do not think any such plan has been contemplated or submitted.<br>Fred's counsel responded to his concerns via email, stating:<br>　　After my review of Pacer and CM/ECF filing, please be advised that our office has not received notice of any stay of discovery in this matter. It is my understanding that the scheduling of the case management conference will not impact the submission of discovery responses; however, the case management order will provide an "end" date for the discovery period. As you are aware, such responses are necessary for the preparation of depositions and continued litigation in this matter. We ask that you please provide your response so that we may continue to work toward a resolution of this matter....<br>The court observes that this email was sent to plaintiff's counsel at 5:16 p.m. on June 3, 2015, approximately 30 minutes *after* plaintiff filed her notice of service of requests for admission on Fred's. |
| 7 | The court notes that plaintiff's argument that in view of the statements in the email, Fred's is judicially estopped from "flip flopping" and now taking the contrary position that the parties had not conferred and agreed on a discovery plan. Plaintiff's reliance on judicial estoppel is misplaced. Judicial estoppel applies only where "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) *a court accepted the prior position;* and (3) the party did not act inadvertently." Reed v. City of Arlington, 650 F.3d 571, 574 (5th Cir.2011) (emphasis added). That plainly is not the case here. |

**End of Document**　　　　© 2022 Thomson Reuters. No claim to original U.S. Government Works.