UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEFEN ESCAMILLA,

    Plaintiff,

v.                                      Case No. 21-C-510

UNITED STATES OF AMERICA,

    Defendant.

**DECISION AND ORDER**

On April 21, 2021, Plaintiff Stefen Escamilla brought this action against Defendant United States of America pursuant to 18 U.S.C. § 925A, seeking a declaration that he is not federally prohibited from possessing firearms and an order directing Defendant to approve a firearm transfer to him. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2). Before the Court are Defendant's motions to dismiss and for summary judgment and Plaintiff's motion for summary judgment. For the following reasons, Plaintiff's motion for summary judgment and Defendant's motion to dismiss will be denied, but Defendant's motion for summary judgment will be granted.

**BACKGROUND**

On July 8, 2019, Plaintiff purchased a handgun from Classic Firearms, an online firearms retailer. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 1, Dkt. No. 37. The firearm was subsequently shipped to a local federal firearms licensee, Tactical Defense, in Appleton, Wisconsin. *Id.* at ¶ 3. Utilizing the National Instant Criminal Background Check System (NICS), Tactical Defense conducted a background check on Plaintiff and the NICS returned a matching record, indicating

that he was an individual who had been an "adjudicated or committed mental defective." Def.'s Proposed Findings of Fact (DPFOF) ¶¶ 1–2, Dkt. No. 49. As a result, the firearm transfer was denied. *Id.* at ¶¶ 4–5. Plaintiff, seeking additional information, utilized the FBI's system that allows an individual who has been denied a firearm transfer to learn the reason for the denial. PPFOF ¶ 6. On August 2, 2019, Plaintiff received a letter from the FBI indicating that he is prohibited from possessing a firearm pursuant to 18 U.S.C. § 922(g)(4) as a person who has been adjudicated as a mental defective or who has been committed to a mental institution. *Id.* at ¶ 7.

This classification stems from Plaintiff's 2018 admittance to an inpatient mental health unit (IMHU) at Samaritan Hospital in New York while Plaintiff was serving in the United States Army and was stationed at Fort Drum. *Id.* at ¶ 10. On March 22, 2018, Plaintiff had an on-base medical appointment. *Id.* at ¶ 11. Medical records related to the appointment show that Plaintiff reported hearing "voices all the time" and that the voices were "telling him to commit suicide." Dkt. No. 14-2 at 4. Although he had not attempted to harm himself at that point, the "intent [was] there to do it." *Id.*[1] During his on-base appointment, Fort Drum staff suggested that Plaintiff see a base psychologist and Plaintiff agreed to do so. PPFOF ¶ 13. The base psychologist suggested that Plaintiff go to Samaritan Hospital, and after Plaintiff agreed, he was accompanied by Fort Drum EMS to the hospital. *Id.* at ¶¶ 14–15. Once there, doctors indicated that Plaintiff would benefit from inpatient treatment and evaluation in the IMHU; Plaintiff agreed and was admitted to the unit. *Id.* at ¶¶ 16–17.

---

[1] During his deposition, Plaintiff repeatedly asserted that he did not remember informing anyone about suicidal ideations or hearing voices that told him to commit suicide. *See* Dkt. No. 39 at 3–4. Nonetheless, both Fort Drum and Samaritan Hospital medical records note Plaintiff's self-reporting of these occurrences. *See* Dkt. Nos. 14-2 & 17.

Medical records submitted by Defendant show that Plaintiff was admitted to the IMHU pursuant to § 9.39 of the New York Mental Hygiene Law (NYMHL). *See* Dkt. No. 14-2 at 1–3, 5–8.[2]  Section 9.39, entitled "Emergency admissions for immediate observation, care, and treatment," allows the director of an appropriate hospital to "receive and retain therein as a patient for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others."  In this context, "likelihood to result in serious harm" includes "a substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself."  NYMHL § 9.39(a)(1). An individual is initially admitted under § 9.39 when a staff physician of the hospital finds that the individual qualifies under the requirements of the section.  The individual may not be detained for more than forty-eight hours "unless within such period such finding is confirmed after examination by another physician who shall be a member of the psychiatric staff of the hospital." NYMHL § 9.39(a)(2).  Upon such confirmation, the individual may be held for up to fifteen days.

Within those fifteen days, if a determination is made that the individual is not in need of involuntary care and treatment, the individual shall be discharged "unless he agrees to remain as a voluntary or informal patient."  NYMHL § 9.39(b).  If, however, the individual is in need of

---

[2] Plaintiff objects to these records as inadmissible hearsay and as lacking any foundation. As to Plaintiff's hearsay argument, the Court concludes that the medical records are admissible under Federal Rules of Evidence 803(4) and 803(6).  As to his argument regarding a lack of foundation, Plaintiff's objection is "neither specific nor [does] it apprise the court of which of the many possible foundational defects" he believes renders the evidence admissible. *United States v. Barker*, 27 F.3d 1287, 1292 (7th Cir. 1994).  Such a basic objection is "far too general to alert the court to the specific shortcoming that is alleged, much less give the court or opposing counsel an opportunity to rectify the claimed effect."  *Id.*  Therefore, the Court will consider the records.

3

involuntary care and treatment, and does not agree to remain as a voluntary or informal patient, "he may be retained beyond such fifteen day period only by admission . . . pursuant to the provisions governing involuntary admission on application supported by medical certification." *Id.* Individuals admitted under § 9.39, or their representatives, have a right to seek judicial review of their admission. NYMHL § 9.39(a).

As noted previously, medical records indicate that Plaintiff was admitted under § 9.39. The admittance form notes that Plaintiff was brought to the hospital by Fort Drum EMS and that Plaintiff was experiencing auditory hallucinations, depression, and suicidal ideations with a plan. Dkt. No. 14-2 at 3. An illegible physician's signature located at the bottom of the form certified that Plaintiff met the requirements for admission under § 9.39. *Id.* The records also demonstrate that a second physician, a staff psychiatrist, confirmed the finding of the first physician. *Id.* at 8. The second physician noted that Plaintiff was experiencing auditory hallucinations, depression, and suicidal ideations with a plan. *Id.* The psychiatrist signed the bottom of the form, again certifying that Plaintiff met the standards for admission under § 9.39. *Id.* Medical records submitted by Plaintiff show that he was discharged from the IMHU with diagnoses of (1) "MDD with psychotic features;" (2) "social anxiety disorder;" (3) "r/o panic disorder;" and (4) "Autism spectrum disorder." Dkt. No. 17 at 4. The discharge summary confirms that Plaintiff was admitted for auditory hallucinations, depression, and suicidal ideation with plans to hang or stab himself. *Id.* At discharge, Plaintiff was not homicidal, suicidal, or psychotic, and did not want to leave the IMHU. *Id.* at 5. Instead, he wished to prolong his stay. *Id.*

## MOTION TO DISMISS

As a threshold matter, Defendant moved to dismiss Plaintiff's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In essence, Defendant

4

argues that Plaintiff's action against it is foreclosed by Plaintiff's failure to seek correction directly from the agency that provided the information upon which his firearm disqualification was based. In support of its argument, Defendant cites 28 C.F.R. § 25.10, which sets out a procedure for an individual who is erroneously denied a firearm as a prohibited person to seek correction of the erroneous information upon which the denial is based by directly contacting the FBI or other agency that provided such information. Dkt. No. 41 at 5. But as Plaintiff points out, his challenge is to the conclusion drawn from his hospitalization record, not the record itself. Dkt. No. 42 at 14. Moreover, nothing in 28 C.F.R. § 25.10 suggests that it is the exclusive remedy for challenging the erroneous denial of a firearm. Indeed, that same regulation explicitly authorizes an individual to bring an action against Defendant for an order directing that the firearm transfer be approved. 28 C.F.R. § 25.10(f). For this reason, Defendant's motion to dismiss is denied.

## SUMMARY JUDGMENT

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the nonmoving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's

5

case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Under 18 U.S.C. § 925A, any person denied a firearm pursuant to subsection (s) or (t) of section 922 "due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system . . . or who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922, may bring an action against . . . the United States . . . for an order directing that . . . the transfer may be approved." Here, Plaintiff is alleged to be barred from possessing firearms by virtue of 18 U.S.C. § 922(g)(4). Section 922(g)(4) prohibits an individual that "has been adjudicated as a mental defective or has been committed to a mental institution" from possessing firearms. Relevant here, the phrase "committed to a mental institution" means:

> A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

27 C.F.R. § 478.11.

Plaintiff argues that he is not federally prohibited from possessing firearms under § 922(g)(4) because his time spent in the IMHU was voluntary and did not involve a formal commitment. Dkt. No. 36 at 6–11. Defendant, on the other hand, asserts that Plaintiff is federally prohibited from possessing firearms because admission to the IMHU under NYMHL § 9.39 constituted an involuntary commitment to a mental institution. Dkt. No. 46 at 4–9. A review of the law surrounding § 9.39 reveals that Defendant has the better of the argument.

6

As an initial matter, Plaintiff argues that the medical records do not demonstrate that he was admitted to the IMHU pursuant to § 9.39. Dkt. No. 50 at 9. Plaintiff acknowledges that the form was used by the hospital and located in his records but argues that it is "equally plausible that Plaintiff just agreed to be admitted and someone at Samaritan filled out that form as a matter of administrative convenience." *Id.* Plaintiff's argument is not convincing. His assertion that he was not admitted under § 9.39 is belied by the fact that, in accordance with § 9.39, a second physician affiliated with the hospital's psychiatric staff confirmed the findings of the first physician in order to extend the time in which Plaintiff could be kept at the hospital. Dkt. No. 14-2 at 8. If the initial form was meant to be a mere placeholder, or used as a matter of administrative convenience, it would make little sense to follow the subsequent detailed procedures under § 9.39. The Court thus concludes that Plaintiff was, in fact, admitted to the IMHU pursuant to § 9.39.

Next, Plaintiff argues that, even if he was admitted under § 9.39, his stay in the IMHU was voluntary and thus does not meet the definition in 27 C.F.R. § 478.11. Dkt. No. 50 at 10–11. In support of this argument, Plaintiff points to his own deposition, in which he asserted that he volunteered to go to the hospital and chose to stay at the hospital following his admittance. *See* Dkt. No. 39 at 3–4. But whether Plaintiff *wanted* to be in the IMHU is irrelevant. The question is whether an admission under § 9.39 is an involuntary commitment, such that it constitutes a disqualifying event for purposes of 18 U.S.C. § 922(g)(4). Several considerations persuade the Court that it is.

First, every case that the Court has encountered in its research of § 9.39 of the NYMHL has described admission under that section as being involuntary. *See, e.g.*, *Phelps v. Bosco*, 711 F. App'x 63, 64 (2d Cir. 2018) ("Section 9.39 creates a procedure to admit an individual into a hospital against her will when her mental illness presents a serious danger to herself or others.");

7

*Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 188 (2d Cir. 2005) ("New York Mental Hygiene Law § 9.39 provides for the temporary involuntary commitment of persons to mental health facilities."); *Gardner v. Bassett Med. Ctr.*, 48 N.Y.S.3d 847, 849 (N.Y. App. Div. 2017) (noting that the petitioner was "involuntarily committed" under § 9.39). In its research, the Court did not encounter a single case in which an admission under § 9.39 was described as voluntary. This is for good reason. The New York State Office of Mental Health, in a guidance document discussing the rights of inpatients in New York State Office of Mental Health Psychiatric Centers, explicitly states that an involuntary admission occurs when an individual is admitted on an emergency basis under § 9.39. *See* NEW YORK STATE OFFICE OF MENTAL HEALTH, *Rights of Inpatients in New York State Office of Mental Health Psychiatric Centers*, *available at* https://omh.ny.gov/omhweb/patientrights/inrtsweb.pdf (last accessed July 7, 2022).

Furthermore, that same guidance document notes that a voluntary admission only occurs when someone who is sixteen years or older *applies in writing for admission*. *Id.*; *see also* NYMHL § 9.13. Plaintiff does not assert that he applied in writing for voluntary admission to the IMHU. Nor does Plaintiff's admission satisfy the "informal" standard. That standard applies when an individual makes an oral request for treatment and no written application is provided. *Id.*; *see also* NYMHL § 9.15. Plaintiff does not argue that his admission was informal, and indeed, his hospital records conclusively demonstrate that he was admitted on an emergency basis pursuant to § 9.39, thus making his admission involuntary. Dkt. No. 14-2.

Plaintiff argues that language within § 9.39 makes clear that an initial admission under the section may be voluntary. Specifically, Plaintiff points to language in § 9.39(b) that states, "[w]ithin fifteen days of arrival at the hospital, if a determination is made that the person is not in need of involuntary care and treatment, he shall be discharged *unless he agrees to remain as a*

8

*voluntary or informal patient.*" NYMHL § 9.39(b) (emphasis added). He argues that "[t]he implication of the word 'remain' in conjunction with voluntary patient is that the status quo during the 15 days is that the patient is there on a voluntary basis." Dkt. No. 36 at 7–8. The more reasonable interpretation, however, is that the decision to remain after being found no longer dangerous is voluntary, not the original admission. This reading is appropriate because § 9.39(b) is concerned with the physical discharge or retention of an individual beyond the fifteen-day period allowed under the statute. In other words, where it is determined that an individual is not in need of involuntary care and treatment, the hospital can no longer continue to involuntarily hold the individual beyond fifteen days, unless the patient agrees to a voluntary stay at the hospital. The statute is not implying that the individual was there voluntarily all along but rather that the hospital may only continue treatment beyond the fifteen days provided for if the individual consents to further treatment.

This is made clear by the sentence immediately following the one analyzed above. The next sentence states, "[i]f he is in need of involuntary care and treatment and does not agree to remain as a voluntary or informal patient, he may be retained beyond such fifteen day period only by admission . . . pursuant to the provisions governing involuntary admission on application supported by medical certification and subject to the provisions for notice, hearing, review, and judicial approval of retention." NYMHL § 9.39(b). In this scenario, if it is determined that involuntary care is needed beyond the fifteen-day period, and the individual does not consent to further treatment, the hospital may utilize § 9.27 to involuntarily hold the individual beyond the fifteen-day limit found in § 9.39, provided the individual meets the qualifications of § 9.27. *See* NEW YORK STATE OFFICE OF MENTAL HEALTH, *Mental Hygiene Law – Admissions Process*, *available at* https://omh.ny.gov/omhweb/forensic/manual/html/mhl_admissions.htm (last

9

accessed July 7, 2022) (noting that a patient may be held involuntarily up to 15 days under § 9.39 and that a patient may be held involuntarily beyond 15 days if he or she meets the standards of § 9.27).

Moreover, as a matter of common sense, a "voluntary emergency commitment," which is what Plaintiff seems to assert took place here, would make little sense. If a commitment was truly voluntary, or informal, there would be no need for two physicians to certify that the individual has a mental illness that is likely to result in serious harm to himself or others. It would be sufficient for an individual to offer a written application or oral request under § 9.13 or § 9.15. Further supporting the conclusion that § 9.39 is an involuntary commitment is the fact that the standards for an involuntary admission on medical certification under § 9.27 are nearly identical to those in § 9.39. Both require two physicians to sign off on the admission and both require a finding that the individual poses a "'substantial threat of physical harm to herself or to others.'" *United States v. Waters*, 23 F.3d 29, 32 (2d Cir. 1994) (quoting *In re Jeannette S.*, 550 N.Y.S.2d 383, 384 (N.Y. App. Div. 1990)). It is unclear why an individual admitted under § 9.39, who has been determined to pose such a threat by two physicians, would be free to leave at any time, while an individual admitted under § 9.27 would not, despite the same findings being made. In sum, the Court concludes that Plaintiff's admission under § 9.39 of the NYMHL constituted an involuntary admission, regardless of whether Plaintiff wished to be there or believed he was there voluntarily.

Plaintiff also argues that his admission to the IMHU under § 9.39 did not constitute a formal commitment within the meaning of 27 C.F.R. § 478.11. Dkt. No. 36 at 8. As discussed above, that regulation defines the phrase "committed to a mental institution" and includes, as part of its definition, the requirement that there be a "formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority." 27 C.F.R. § 478.11. Plaintiff argues

that his commitment to the IMHU by the signature of two physicians does not meet this standard because, applying the canon *ejusdem generis*, the term "other lawful authority" encompasses only governmental bodies with judicial or quasi-judicial authority, not individual physicians. Dkt. No. 36 at 9–10. But courts that have considered §§ 9.27 and 9.39 of the NYMHL in conjunction with 18 U.S.C. § 922(g)(4) have concluded that each section constitutes a commitment within the meaning of federal law.

In *United States v. Waters*, the Second Circuit examined § 9.27 of the NYMHL to determine whether an individual admitted by the certification of two physicians, as § 9.27 requires, was "committed" within the meaning of 18 U.S.C. § 924(g). 23 F.3d 29 (2d Cir. 1994). The Second Circuit encountered the same argument advanced here: that the individual was not "committed" within the meaning of the federal statute because the commitment was not carried out by a court, board, commission, or other lawful authority. *Id.* at 33. The court rejected Waters' argument and concluded that, "whether termed an 'admission' or a 'commitment,' § 9.27 established 'commitment' procedures under New York State law, and Waters was 'committed' pursuant to those procedures." *Id.* at 34. It further stated that the system of involuntary admission under § 9.27, "with its attendant requirements of notice and judicial proceedings, comports with federal policy," and thus, when employed, "constitute[s] a 'commitment' within the meaning of 18 U.S.C. § 922(g)(4)." *Id.* at 35–36.

As discussed above, the requirements of §§ 9.27 and 9.39 are quite similar, leading to the natural conclusion that admission under § 9.39 must also constitute a "commitment" within the meaning of 18 U.S.C. § 922(g)(4). Indeed, the Second Circuit has held as much, albeit in an unpublished opinion. *See Phelps*, 711 F. App'x at 64–65. In *Phelps*, the Second Circuit noted that, like § 9.27, § 9.39 "creates a procedure to admit an individual into a hospital against her will

11

when her mental illness presents a serious danger to herself or others," and provides the individual, or her representatives, with a right to seek judicial review of that determination. *Id.* The court went on to hold that the two-physician certification procedure utilized by § 9.39 was "exactly the sort of determination that a federal statute should include in its definition of 'commitment' insofar as it is concerned with preventing firearms from getting into the hands of those whose mental illness might lead them to commit acts of violence. And it is the sort of process that ensures the determination is not arbitrary." *Id.* at 65. The Second Circuit therefore affirmed the district court's holding that commitment pursuant to § 9.39 of the NYMHL "provides an independent disqualifying event under 18 U.S.C. § 922(g)(4)." *Phelps v. Bosco*, No. 1:13-CV-1510 (GTS/CFH), 2017 WL 437407, at *29 (N.D.N.Y. Feb. 1, 2017). At least one other court has endorsed this understanding. *See Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 314 (W.D.N.Y. 2018) ("Significantly, any involuntary commitment under [NYMHL] Article 9 . . . constitutes a disqualifying 'commitment to a mental institution' for purposes of 18 U.S.C. § 922(g)(4)."). In light of these authorities, the Court concludes that an admission under § 9.39 constitutes a "commitment" within the meaning of 18 U.S.C. § 922(g)(4) and 27 C.F.R. § 478.11.

In sum, Plaintiff's commitment to the IMHU pursuant to § 9.39 of the NYMHL constituted a "disqualifying event under 18 U.S.C. § 922(g)(4)." *Phelps*, 2017 WL 437407, at *29. The commitment was both formal and involuntary within the meaning of 27 C.F.R. § 478.11, and thus, Plaintiff is prohibited from possessing a firearm under federal law. Therefore, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.[3]

---

[3] Plaintiff briefly argues that, based on Defendant's failure to respond to requests for admission, Defendant has admitted that it does not have information that Plaintiff (1) has been adjudicated as mentally defective; (2) was committed to a mental institution; or (3) received any involuntary treatment. Dkt. No. 36 at 5–6. But those requests were premature, as they came prior to the Rule 26(f) conference. Because the requests for admission were prematurely served,

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. No. 35) is **DENIED**, Defendant's motion to dismiss (Dkt. No. 40) is **DENIED**, and Defendant's motion for summary judgment (Dkt. No. 45) is **GRANTED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 7th day of July, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge

---

Defendant is not deemed to have admitted anything by failing to respond. *See Harp v. Glock*, Nos. 18-C-1039, 18-C-1159, 2019 WL 1859258, at *1 (E.D. Wis. Apr. 25, 2019) (citing Fed. R. Civ. P. 26(d)(1)).